**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMC Investors LLC and<br>AMC Investors II LLC<br>    Debtors/Appellants,<br>     v.<br><br>Eugenia VI Venture Holdings<br>Ltd.,<br>    Appellee. | CIVIL NO. 11-592(NLH)<br>          11-593(NLH)<br><br>**OPINION** |

**APPEARANCES:**

Maria Aprile Sawczuk
Stevens & Lee
1105 North Market Street
7th Floor
Wilmington, DE 19801

Constantine D. Pourakis
485 Madison Avenue, 20th Floor
New York, NY 10022

Brian P. Miller
Akerman Senterfitt
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714

    On behalf of debtors/appellants

Mark David Collins
Cory Dean Kandestin
Marcos Alexis Ramos
Richards, Layton & Finger, PA
One Rodney Square, 920 N. King Street
Wilmington, DE 19801

Mitchell A. Karlan
200 Park Avenue
New York, NY 10166

    On behalf of appellee

**HILLMAN**, District Judge

Presently before the Court is the motion of debtors and appellants, AMC Investors, LLC and AMC Investors II, LLC, for leave to file an interlocutory appeal of an order entered by the bankruptcy court in the involuntary Chapter 7 bankruptcy proceedings commenced against the debtors by the appellee, Eugenia VI Venture Holdings Ltd.  For the reasons expressed below, the motion will be denied.

### **DISCUSSION**

The underlying Chapter 7 bankruptcy concerns a multi-million dollar credit agreement between debtors and Eugenia that, due to what Eugenia claims to be fraud and mismanagement, left the debtors insolvent and in default under the credit agreement.  In addition to other legal actions, Eugenia, as the debtors' sole creditor, instituted an involuntary Chapter 7 bankruptcy proceeding against each of the debtors.  A trustee was appointed to the debtors' estates.[1]

During the course of the bankruptcy proceedings it became clear that the trustee lacked the resources necessary to pursue any litigation to benefit the debtors' estates.  As a result, Eugenia

---

[1] The two debtors are AMC Investors, LLC and AMC Investors II, LLC, and two involuntary Chapter 7 petitions were filed, 08-12264 (CSS) and 08-12265 (CSS).  These bankruptcies are being handled jointly, and the Court will refer to them collectively.

sought derivative standing to assert claims on behalf of the debtors' estates. The bankruptcy court held that, pursuant to Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003), the creditor, Eugenia, had standing to assert claims in the Chapter 7 bankruptcy, despite the presence of an appointed trustee.

In their request for leave to appeal that decision, the debtors contend that the bankruptcy erred in that finding. The debtors are seeking an interlocutory appeal because they claim that this Court's reversal of that decision would eliminate extraordinary costs for both parties in litigating claims that have no prospect for success.[2]

The decision whether to grant leave to file an interlocutory appeal from the bankruptcy court is informed by reference to 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. In re SemCrude, L.P., 407 B.R. 553, 556 (D. Del. 2009) (citing In Re Magic Restaurants, Inc., 202 B.R. 24, 25 (D. Del. 1996)). Leave to file an interlocutory appeal may be granted when the order at issue: (1) involves a controlling question of law; (2) upon which

---

[2] This Court has jurisdiction to hear appeals from final judgments, orders, decrees, and, with leave of the court, from interlocutory orders and decrees entered by the bankruptcy court. 28 U.S.C. § 158(a).

there is substantial grounds for difference of opinion as to its correctness; and (3) if appealed immediately, may materially advance the ultimate termination of the litigation.  Id. at 556-57 (citing Katz v. Carte Blanche Corporation, 496 F.2d 747, 754 (3d Cir. 1974).

  A court's discretion to grant or deny an interlocutory appeal is not limited by this test, however.  "Leave to file an interlocutory appeal may be denied for reasons apart from this specified criteria, including such matters as the appellate docket or the desire to have a full record before considering the disputed legal issue."  Id. (citation omitted).  Moreover, because an interlocutory appeal "represents a deviation from the basic judicial policy of deferring review until the entry of a final judgement, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist."  Id. (citation omitted).

  Here, the debtors argue that the bankruptcy court's application of the Cybergenics case in a Chapter 7 proceeding was patently incorrect because that case only applies to Chapter 11 proceedings.  The debtors further argue that allowing Eugenia to have derivative standing to bring claims on behalf of the debtors' estate would obviate the role of the trustee, who is only appointed in Chapter 7 cases.  The debtors contend that the bankruptcy

court's interpretation of Cybergenics is a controlling question of law that leads to a substantial grounds for difference of opinion as to its correctness, and this Court's determination of that question may materially advance the resolution of the litigation.

In its opposition to the debtors' motion, Eugenia argues that the debtors do not have standing to appeal because they are not "aggrieved persons" whose rights can be vindicated on appeal. They also argue that the debtors have failed to meet any of the three elements needed in order for this Court to entertain their interlocutory appeal.

This Court will decline to hear the debtors' appeal because the bankruptcy's application of Cybergenics does not present the requisite difference of opinion. We also conclude that appellant has failed to demonstrate exceptional circumstances or has otherwise shown how the appeal will advance the litigation. Appellant has therefore failed to meet the requirements for interlocutory intervention by this Court.[3]

---

[3] Ostensibly, the debtors' standing to file this motion should be the first issue resolved. While we have serious doubts about appellants' standing to pursue this appeal in the absence of any direct harm to the debtor, see In re Dykes, 10 F.3d 184, 188-89 (3d Cir. 1993) ("To appeal from an order of a bankruptcy court one must show that the order diminishes one's property, increases one's burdens, or impairs one's rights."), we also recognize that whether the debtors meet the "persons aggrieved" test is a fact-intensive inquiry. In re Fryer, 235 Fed. Appx. 951, 954 (3d Cir. 2007) (citing In re Dykes, 10 F.3d at 185, 188) ("Whether a litigant has standing to appeal a Bankruptcy Court

The debtors' main argument is that the bankruptcy court misapplied the Cybergenics standard by erroneously applying its tenets to a Chapter 7 bankruptcy. The debtors, however, have failed to show that courts have interpreted the case so narrowly. To the contrary, several courts have applied Cybergenics-or its rationale--in Chapter 7 cases. See In re Rim, 2010 WL 4615174, *7 (D.N.J. 2010) ("While the Third Circuit has not addressed derivative standing for Chapter 7 creditors, other courts have permitted individual creditors to bring derivative avoidance actions where the Trustee has declined to do so." (citing In re Trailer Source, Inc. v. Jackson Truck & Trailer Repair, Inc., 555 F.3d 231, 243-44 (6th Cir. 2009) (finding that "there is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts and that "there are substantial policy reasons for allowing derivative standing in Chapter 7 proceedings"); In re Racing Servs., Inc. v. North Dakota Racing Comm'n, 540 F.3d 892, 898 (8th Cir. 2008) (holding that "derivative standing is available to a creditor to pursue avoidance actions

---

ruling is ordinarily a question of fact to be resolved by the District Court . . . ."). In light of our determination that the debtor has failed to meet the standard for an interlocutory appeal, we need not resolve any factual dispute as to how the debtors might be harmed by allowing the appellee to pursue derivative claims on their behalf.

when it shows that a Chapter 7 trustee ... is 'unable or unwilling' to do so"); In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004) ("[W]e frankly cannot imagine that the Third Circuit would employ a different rationale in a Chapter 7 matter [than it did in Cybergenics ].").); see also In re Yes! Entertainment Corp., 316 B.R. 141, 145 (D. Del. 2004) ("Although Cybergenics did not specifically lay out the procedures that should be followed in allowing creditors derivative standing, the Third Circuit expressed its agreement with the approaches taken by the Second and Seventh Circuits." (citations omitted)).

Moreover, the bankruptcy court's decision to confer derivative standing to Eugenia was based not only on its interpretation of Cybergenics and other case law, but also on the facts specific to this case--namely, that the trustee lacks the funds to prosecute potentially colorable claims, and that the trustee consents to Eugenia's derivative status. These facts distinguish it from other cases where no derivative status was conferred in a Chapter 7 case.

Thus, in making its decision, the bankruptcy court did not make a ruling on an issue where there has been a substantial ground for difference of opinion.[4] See In re Advanced Marketing

---

[4] In deciding whether to grant the debtors' request to hear their interlocutory appeal, the Court makes no determination as to the correctness of the bankruptcy court's decision. Indeed,

Services, Inc., 2008 WL 5680878, *1-2 (D. Del. 2008) ("A question of first impression, a lack of judicial authority on a legal question, or a party's disagreement with a court's decision do not demonstrate a substantial ground for difference of opinion." (citations omitted)); In re Dwek, 2011 WL 487582, *4 (D.N.J. 2011) (explaining that a difference of opinion, the second Section 1292(b) factor, "must arise out of genuine doubt as to the correct legal standard," and that "[i]ssues of fact are not an appropriate basis for an interlocutory appeal" (citations omitted)).

Additionally, the debtors have failed to show any exceptional circumstances or how this appeal will help to reach the bankruptcy's final resolution that would warrant "a deviation from the basic judicial policy of deferring review until the entry of a final judgement." In re SemCrude, L.P., 407 B.R. 553, 556-57 (D. Del. 2009) (citations omitted). As evidenced by the bankruptcy court hearing transcript, the derivative claims to be advanced by Eugenia may be subject to several defenses, such as the statute of limitations, collateral estoppel, and the doctrine of *in pari delicto*, that may result in the dismissal of those claims. (See Hearing Transcript, Debtors' Ex. 4 at 38.) Thus, regardless of whether the trustee or Eugenia brings those claims, they may lack

---

if the Court were to do so while still also declining to grant the debtor's motion, that would effectively create a backdoor appeal.

validity, and, correspondingly demonstrate that the bankruptcy's grant of derivative standing to Eugenia is not "serious to the conduct of the litigation, either practically or legally."[5]  Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974); see also In re Advanced Marketing Services, Inc., 2008 WL 5680878, at *2 (D. Del. 2008) (denying the claimant's motion for leave to appeal the bankruptcy court's denial of its request for a TRO, and explaining, "[I]t appears to the Court that, regardless of the TRO ruling, the Bankruptcy Court will be required to preside over additional proceedings related to [the claimant's] claim whether it be further injunctive proceedings, summary judgment proceedings, or a trial").

## CONCLUSION

Because the debtors have failed to meet all the required elements to justify an interlocutory appeal, the debtors' motion for leave to appeal the bankruptcy court's order granting Eugenia

---

[5] We note that the debtors contend that the appellee has sought to abuse the bankruptcy process by re-litigating claims dismissed in the Southern District of New York and other fora or are otherwise barred.  If debtors are successful in dismissing Eugenia's claims at the motion to dismiss stage then their fears of costly and protracted litigation that may have resulted from the bankruptcy court's order will be assuaged. Moreover, the inquiry into the validity of those defenses is fact-specific which clearly counsels against the granting of an interlocutory appeal.

derivative rights to pursue the estates' claims must be denied.  An appropriate Order will be entered.



Date: March 14, 2012                          s/ Noel L. Hillman
                                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey